# H. B. Claflin Co. v. Rodenberg.

*Statutory Claim Suit.*

101   213
104   564
101   213
o113  576

1. *Evidence as to value of goods in claim suit.*—In a statutory claim
suit, where the sale of goods by an insolvent debtor to the claimant,
in payment of an alleged indebtedness, is assailed on the ground of
undervaluation, the amount the claimant received for such goods at
a private sale subsequently made to third parties, is not legal evi-
dence against the attacking creditor of the value of the goods; and
questions seeking to elicit such evidence should not be allowed.

2. *Declarations against the interest of claimant; when incompetent.* In
a statutory claim suit, evidence of declarations made by the grantor
of the claimant against the interest of the latter, when he was not
present to deny or explain them, is incompetent, and its admission is
error.

3. *Indefinite exceptions; not considered on appeal.*—It is the duty of
the party excepting to the ruling of the trial court, to make clear to
the appellate court the error insisted on; and if a question asked a
witness is too indefinite to enable the court of appeal to determine
whether it sought to elicit legal or illegal evidence, the assignments of·
error based on an exception to the ruling of the trial court on such
question will not be considered.

4. *Indefinite assignments of error; not considered on appeal.*—An as-
signment of error that "the court erred in sustaining claimant's ob-
jections to questions showing the fraudulent intent of [the debtor] in
disposing of goods. Pages 62 and 63," when there are a number of ques-
tions on the pages referred to, to which the court sustained objec-

tions, is too indefinite to be reviewed by this court; since such assignment of error does not point out to the court the questions supposed to show such intent.

5. *Charge as to fraudulent conveyance.*—In a statutory claim suit, where the sale to the claimant is attacked as fraudulent, a charge which instructs the jury that they must find a verdict for the claimant, if the evidence in the cause shows an honest intent on the part of the claimant (grantee) to secure the payment of a *bona fide* indebtedness, and that there was no reservation of benefit to the debtors in the purchase of said goods from them, and that the claimant received no more goods than was sufficient to pay his debts, asserts a correct proposition of law, and is properly given.

6. *Fraudulent conveyance; when more goods delivered than mentioned in bill of sale.*—In a statutory claim suit, where an attaching creditor attacks as fraudulent the sale of the attached property by the debtor to the claimant, if it is shown that there were delivered to the claimant more goods than were mentioned in the bill of sale, the transaction is fraudulent as to the other creditors of the debtor, and the entire sale should be set aside as fraudulent and void.

APPEAL from the Circuit Court of Dallas.

Tried before the Hon. JOHN MOORE.

This was a statutory claim suit instituted by Charles L. Rodenberg claiming a certain portion of a stock of goods, which had been levied on under an attachment issued at the instance of H. B. Claflin Co. against F. S. & H. Rosenberg.

The evidence, as shown by the bill of exceptions, tends to show that F. S. & H. Rosenberg, who were doing a mercantile business in Selma, Ala., were, on January 20, 1891, indebted to H. B. Claflin Co. in the sum of $6,203.61. On the evening of January 20, 1891, they sold a part of their stock of goods to Charles L. Rodenberg in satisfaction of an indebtedness of $1,500. These goods were sold and packed in boxes and a trunk between 7 and 9 o'clock that night, and were left in the store. At half past 10 o'clock the same night F. S. & H. Rosenberg made an assignment for the benefit of their creditors to one Rothchild, and at one o'clock on the same night plaintiff sued out and had levied an attachment on all of the goods in the store of F. S. & H. Rosenberg, including these goods packed in boxes and in the trunk, which had been sold to Charles L. Rodenberg. On the next morning the said Charles L. Rodenberg demanded of the sheriff the goods which he had bought. Upon the refusal of the sheriff to surrender the

said goods, said Charles L. Rodenberg made the necessary affidavit, and gave bond in double the appraised value of the goods, and instituted a claim suit for said goods, as provided by the statute.

The claimant introduced in evidence a bill of sale from F. S. & H. Rosenberg for the goods purchased, to which bill of sale was attached an itemized statement of the goods, marked "Schedule A." According to this itemized statement the goods thus sold to the claimant amounted to $1,603.45. At the bottom of this statement there was a receipt of Charles L. Rodenberg, acknowledging payment in full of the indebtedness of F. S. & H. Rosenberg to him. The evidence for the plaintiff tended to show that there was attached to the same bill of sale another statement called "Schedule A, continued," amounting to $605.02, at the bottom of which payment in full was acknowledged by Charles L. Rodenberg. There was also evidence introduced in behalf of the plaintiff that there were articles of embroideries and table napkins, varying in value, according to the testimony, from $200 to $600, which were delivered to the claimant, but which were not included in these itemized statements. The claimant himself testified that in the trunk there were some articles that were not included in the itemized statements; and, also, that there were some articles included in the statement, which were not delivered to him.

The evidence of the claimant further showed that all of the goods he received from F. S. & H. Rosenberg were sold by him to one Jack Holtzman and Oberndorf & Ullman; that Oberndorf & Ullman paid the claimant $1,250 for the goods they bought, which amount was 60 per cent. of the New York cost of the goods at the time of the purchase on March 1, 1891; and that Holtzman paid something over $100 for the goods he purchased.

Upon re-direct examination of the claimant he was asked, "What was the amount received by you for all the goods sold to Jack Holtzman?" and "What amount did you receive for all the goods you sold to Oberndorf & Ullman?" The plaintiff objected to each of these questions, and separately excepted to the court's overruling its objections to each of them.

On the examination of Robt. Kennedy, after his hav-

ing testified that he was the deputy sheriff who levied the attachment at the suit of Claflin & Co. against F. S. & H. Rosenberg, and that he delivered the goods claimed by the claimant to him, he was asked on cross-examination, "What was the amount of the H. B. Claflin Co.'s debt, claimed when levy was made?" The plaintiff objected to this question, and duly excepted to the court's overruling its objection.

Upon the introduction by the plaintiff of J. I. Bizzell, he testified that he was in the employ of the defendants in attachment, and assisted in packing the goods sold to Chas. L. Rodenberg in the boxes and trunk, and that when he commenced to put up the goods, F. S. Rosenberg told him to value them, but that after valuing a few of the goods, F. S.` Rosenberg stopped him, saying he put too high a valuation on them. This witness was asked by the plaintiff, "If Fred S. Rosenberg. while they were selecting and packing the goods, told him, witness, that claimant had agreed to receive goods for him?" The court sustained the claimant's objection to this question, and the plaintiff duly excepted. The plaintiff then asked the witness, "If he knew of Fred S. Rosenberg trying to get the claimant to receive goods for him, the said F. S. Rosenberg?" The claimant objected to this question, the court sustained the objection and plaintiff duly excepted. The plaintiff then offered to prove by said witness "that after the packing of the boxes, F. S. Rosenberg put in his pockets a number of bill heads," but claimant objected to this evidence, the court sustained the objection, and the plaintiff excepted. There were several other exceptions reserved by the plaintiff to the court's sustaining the claimant's objections to the evidence sought to be introduced by this witness; but the assignments of error to these rulings render it unnecessary to notice them in detail. This assignment of error is in the following language : "The court erred in sustaining claimant's objection to questions showing the fraudulent intent of F. S. Rosenberg in disposing of goods. Pages 62 and 63."

Upon the introduction of all the evidence the court, at the request of the claimant, gave the following written charges to the jury, to the giving of each of which the plaintiff separately excepted: (1.) "The court never strives to force conclusions of fraud, and if all the facts

in evidence in this case are susceptible of an honest intent and without fraud so far as Rodenberg (the claimant) is concerned, and that there was no reservation of benefit to F. S. & H. Rosenberg in the purchase of said goods, and that his was a *bona fide* debt, and that he received no more goods than were sufficient to pay his debt, then you will find a verdict for claimant." (2.) "If the jury believe from the evidence that Rodenberg received other goods than those named in his bill of sale from F. S. & H. Rosenberg, yet that would not invalidate the sale to him, if the jury believe the purchase by him was fair and honest, and a reasonably fair sum was paid for the goods."

There was judgment for the claimant. The plaintiff appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

PETTUS & PETTUS, and DAWSON & PITTS, for appellants.

G. A. ROBBINS, and CRAIG & CRAIG, *contra*.

HEAD, J.—The first and second assignments of error must be sustained. The sale of the goods by F. S. and H. Rosenberg to claimant was being assailed by the plaintiff on the ground of undervaluation. What claimant received for the goods, on private sales made by him afterwards to third parties, can not be legal evidence, against the plaintiff, of their value. Such sales afford no test of value. To allow such evidence would be to allow a party to make evidence for himself.

The question asked Kennedy, "What was the amount of the H. B. Claflin Company's debt, claimed when the levy was made?" seems entirely immaterial and useless, and, no doubt, will not be asked again on another trial.

The matters proposed to be proved by the witness, Bizzell, covered by the fourth and seventh assignments of error, were not competent evidence against the claimant. They are declarations of Fred. S. Rosenberg against the interest of claimant, when the latter was not present to deny or explain them.

It is the duty of a party excepting to make clear to this court the error insisted on. The question to witness, Bizzell, "If he knew of Fred. S. Rosenberg trying to get claimant to receive goods for him, the said Fred.

S. Rosenberg?" is too indefinite to enable us to determine whether it sought to elicit legal evidence or not.

The sixth assignment of error is too general and indefinite. There are a number of questions covered by pages 62 and 63 of the record, to which the court sustained objections. We are asked by this assignment to consider those "showing the fraudulent intent of F. S. Rosenberg in disposing of goods." The appellant should have pointed out to us the questions supposed to show such intent.

The first charge given at the instance of claimant is free from error. It but asserts the oft repeated doctrine of this court in reference to sales of goods in payment of existing debts.

There is evidence tending to show that there were goods in the boxes and trunk delivered to claimant which were not mentioned in the bill of sale which was executed by the Rosenbergs to claimant, at the time of the purchase, on the 20th day of January, 1891. The title to those goods, however, is not involved in the issue tried in this cause. The only goods claimed by the claimant, and for which he gave bond to try the right of property in, are those mentioned and described in the schedule to the bill of sale. But this feature of the transaction, nevertheless, raises an important inquiry touching the *bona fides* and validity of the sale. The bill of sale, which is set out in the record, has its well defined legal effect, which could not be altered or varied by any other agreement, express or implied, made at the time and resting in parol. Its effect is that the Rosenbergs sold to claimant the goods mentioned therein, and no other, in full payment and discharge of the entire indebtedness owing him by them; so that the moment the bill of sale was executed and delivered, that indebtedness was discharged by the transfer of the goods therein conveyed. It matters not that those goods may have been worth less than the indebtedness, for by the contract of the parties the transfer of them was accepted in full payment. The debt was cancelled as completely as if it had been paid in cash. That contract, the moment it was executed, resulting, as we have seen, in the cancellation of the indebtedness, became irrevocable and unalterable, as against the other creditors of the Rosenbergs. They could not then or thereafter lawfully deliver other goods

to the claimant in payment of that indebtedness ; and if they did add to the goods mentioned in the bill of sale, other goods of material value, and deliver the same to the claimant, as and for payment of the said indebtedness ; and if the claimant knew of such unlawful delivery, or afterwards ratified it by disposing of the goods so unlawfully delivered, as his own, the transaction was a fraud upon the other creditors which authorized them to set aside the sale, as to all the goods. Such a transaction is nothing less than a demonstration that the parties applied more of a debtor's goods in alleged payment of his debt than by law they were entitled to do, as against the rights of other creditors. It was, in effect, an attempt to change the terms of the written contract, revive the debt and apply more goods to its payment ; and all occurred at one and the same time and as parts of one transaction. This they could not lawfully do. If done, its effect was to hinder, delay and defraud the other creditors, and the title of the claimant can not be sustained. The second charge, therefore, given at the request of the claimant ought to have been refused.

For the errors mentioned, the judgment is reversed and the cause remanded.

Reversed and remanded.