ULRICH, by guardian *ad litem,* Respondent, vs. SCHWARZ, Appellant.

*April 4—April 30, 1929.*

For the appellant there were briefs by *Grotophorst, Quale & Langer* of Baraboo, and oral argument by *Norman Quale.* *V. H. Cady* of Baraboo, for the respondent.

OWEN, J. On the evening of August 12, 1927, the defendant struck the plaintiff with his fist in the vicinity of his right ear. This action was brought to recover damages. The assault and battery is not denied. Upon the trial the defendant sought to introduce proof to show that at the time of the assault the plaintiff was one of a party of young men who had entered upon the premises of, and were then engaged in provoking a quarrel with, defendant's brother. The reception of this evidence was urged as proper in the mitigation of compensatory damages, upon the authority of *Wilson v. Young,* 31 Wis. 574. In that case compensatory damages were divided into two classes. The second class included "those which may be recovered for injuries to the feelings, of which latter class the elements are, the insult, the indignity, the public exposure and contumely, and the like." It was held that the circumstances of the assault might mitigate the damages which could properly be assessed for these elements of compensatory damages, and that circumstances having such a tendency were properly admissible· in evidence. This doctrine was concurred in by Justices COLE and LYON, Chief Justice DIXON dissenting, expressing the view that any and all elements of compensatory damages could be likewise mitigated, as had been previously held in *Morely v. Dunbar,* 24 Wis. 183.

In *Craker v. C. & N. W. R. Co.* 36 Wis. 657, the Justices concurring in the decision joined with Chief Justice RYAN in overruling the doctrine thus announced in *Wilson v. Young,* 31 Wis. 574, and it was there said that no substantial basis existed for a classification of the various elements going to make up compensatory damages in such cases, and that the mitigation of compensatory damages was never permissible. *Craker v. C. & N. W. R. Co.* has since been followed. *Fenelon v. Butts,* 53 Wis. 344, 10 N. W. 501; *Grace v. Dempsey,* 75 Wis, 313, 43 N. W. 1127; *Prindle v.·*

*Haight,* 83 Wis. 50, 52 N. W. 1134. The doctrine of that case must be held to be the established rule of this court.

Counsel for appellant now concede that the proffered evidence was not admissible for the purpose of mitigating compensatory damages, but that it was admissible to enable the jury to properly appraise the damages which by the charge of the court were permitted to be assessed for "sense of humiliation and shame caused by the defendant publicly assaulting him in the manner the evidence convinces you the assault was committed." It is contended that such damages can only be proved by evidence showing the circumstances under which the assault was committed, such as whether the assault was in a public place, whether the plaintiff was conducting himself blamelessly, etc.

The cases hereinbefore cited dealing with the question of whether any of the elements of compensatory damages may be mitigated arose upon exceptions to the charge, and dealt only with that particular principle of law. The question of whether evidence leading up to and surrounding the assault was admissible as bearing upon the degree of humiliation and shame suffered by the plaintiff was not discussed. We deem it apparent that injuries to feelings resulting from an assault depend in no small degree upon the character, temperament, and sensibilities of the person assaulted and the circumstances under which the assault occurred. If a man assaults a woman with intent to carnally know her, she is entitled to recover damages for injury to her feelings resulting from the assault. Would it not make a difference whether the woman thus assaulted was a chaste woman or an inmate of a house of ill fame? It is apparent that the feelings of the chaste woman would be more deeply wounded than would be those of the common bawd. Such also would be the case if the assault was encouraged by the lascivious conduct of the woman just before the assault. These considerations led the Texas court to rule that it was proper to

ask the prosecutrix whether she had had sexual intercourse with the defendant. *Donaldson v. State,* 10 Tex. Ct. App. 307. In *Nelson v. Snoyenbos,* 155 Wis. 590, 145 N. W. 179, it was held that similar evidence has a bearing upon both compensatory and exemplary damages. That was an action to recover damages for assault and battery and false imprisonment. It appeared that the proprietor of a grocery store caught a boy stealing tobacco, whereupon he cuffed and detained him. The trial judge ruled that the question of whether the boy stole the tobacco was immaterial. This court held that it had an important bearing in mitigation of damages both compensatory and punitory. It was also there held that the trial court improperly excluded evidence that about two months after the affair in question, by reason of the plaintiff having been found in a store, he was taken by the sheriff to the county jail, the court saying that such evidence "bore directly on the probable degree of shame and humiliation suffered by reason of the defendant's conduct and should have been allowed because it affected the amount to be recovered."

It seems plain that in a case such as this the jury should have before it some evidence upon which it may intelligently assess damages for the humiliation and shame sustained by the plaintiff, unless in all cases they are to apply a flat rule or an arbitrary schedule as in workmen's compensation cases. This of course is not the law. The more refined and delicate the sensibilities of the plaintiff the greater would be the shame and humiliation, and evidence which affords the jury some light on this question is certainly material upon the amount to which plaintiff is entitled for this element of compensatory damages. We hold, therefore, that evidence of all the circumstances leading up to this assault should have been admitted.

The evidence tended to show that the defendant's brother had turned the hose upon this gang of boys or some of them

earlier in the evening in order to eject them from his premises; that in the dance hall they conceived the idea of going to the defendant's brother's house for the purpose of "getting him;" that the defendant overheard their conversation and followed them to the house of his brother where this assault occurred. Plaintiff claims that he merely followed the crowd for the purpose of witnessing the row, but the inference that he was part and parcel of the posse is plainly permissible from all the evidence. His attitude in the matter certainly has a bearing upon the degree of the humiliation and shame which he suffered as a result of defendant's assault. Throughout the trial the court persisted in an attitude which kept from the jury evidence which would have been very helpful in fixing the amount of plaintiff's damages. The contrary policy should have been pursued and all evidence should have been admitted throwing light upon plaintiff's participation in the affair, not for the purpose of mitigating his actual or compensatory damages resulting from the assault, but for the purpose of permitting the jury to determine what such actual damages were.

The court instructed the jury that plaintiff's compensatory damages "should be something more than mere nominal damages." Under our system of jurisprudence it is peculiarly within the province of the jury to exercise the initial judgment with reference to the amount of damages sustained by plaintiff in cases of this nature. "The right of the court, in exercise of a sound discretion, to set aside a verdict as being too large or too small, does not make it proper for the court to dictate the amount of the verdict." *Candrian v. Miller,* 98 Wis. 164, 168, 73 N. W. 1004. In that case it was held that a request to instruct the jury to the effect that plaintiff was entitled to recover substantial damages was properly refused, and in *Bergeron v. Peyton,* 106 Wis. 377, 382, 82 N. W. 291, it was held error for the court to charge

the jury to the effect that they must not return a verdict for a mere nominal amount.

Affidavits are made a part of the bill of exceptions from which it appears that after the jury retired to their room they asked the bailiff to inquire of the court what constitutes a nominal amount. The bailiff communicated this request to the judge. There is some dispute concerning the judge's reply, but it was to the effect that he could not tell them, or that he had no further communication to make to them, which reply was communicated to the jury by the bailiff. If it were proper for the court to charge the jury that they should assess more than a mere nominal amount, certainly at the request of the jury they should have been advised as to what constituted a nominal amount, and such instruction should have been given in the court room and reduced to writing. The court should communicate with the jury in no other way. *Hurst v. Webster Mfg. Co.* 128 Wis. 342, 107 N. W. 666. In this case the jury returned a verdict for $58 as compensatory damages, nothing being assessed for punitory damages. This carried full costs under the statute. There is much reason to believe that but for the charge requiring them to assess more than nominal damages they would have found less than $50, which would have carried no more costs than damages. Sec. 271.01, Stats.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.