143 So.2d 621

**Fred N. BUSH, Jr.**

v.

**Roy F. STANTON, Jr.**

6 Div. 434.

Supreme Court of Alabama.

July 26, 1962.

G. W. Nicholson, Birmingham, for appellant.

Mead & Norman and Marshall H. Fitzpatrick, Birmingham, for appellee.

COLEMAN, Justice.

This is an appeal by plaintiff from a judgment for defendant rendered on the verdict of a jury in an action for assault and battery. Plaintiff's motion for new trial was overruled and plaintiff severally assigns as errors the overruling of three grounds of the motion.

The defendant is a surgeon. He performed a hernia operation on plaintiff's right side. Plaintiff contends that the parties agreed that defendant should operate on the hernia on plaintiff's left side, but that defendant operated on plaintiff's right side instead, contrary to the agreement and without plaintiff's consent, and that when defendant thus operated on plaintiff's right side, defendant committed an assault and

battery on plaintiff for which he is entitled to recover.

Defendant contends that prior to the operation, he advised plaintiff that plaintiff's hernia on the right side should be operated on first, and that plaintiff then agreed that defendant should operate on plaintiff's right side. Thus, contends defendant, he operated with plaintiff's consent and there was no assault or battery committed by defendant.

Assignment of Error 1 is that the court erred in overruling Ground 12 of the motion which recites as follows:

"12. For that the Court erred in refusing to give to the jury further instructions relative to a release when the jury requested said instructions."

The only matter in the transcript to support Ground 12 is found in two affidavits which were submitted in support of the motion for new trial. The affidavits are made by two attorneys for plaintiff, each attorney making only one affidavit.

The first affiant deposes to the following effect: that on completion of the trial, the jury retired to the jury room; that two or three hours later one of the jurors rapped on the door; that a court official opened the door and went into the jury room, came out "a minute or so later", and went into the chambers of the trial judge; that a few minutes later the official returned from the judge's chambers, went directly back to the jury room, and after a few minutes came out of the jury room when he was stopped by affiant and his associate; that affiant's associate asked the official what had transpired but the official would not tell them; that affiant dismissed the matter from his mind for the time being; that "about an hour or so later", the attorneys for defendant came into the courtroom and were told by affiant what had happened an hour or so earlier; that affiant and one of defendant's attorneys "confronted" the court official and sought to learn from him what had occurred; that after some conversation, the official told affiant and defendant's attorney that "the jurors wanted to have the Judge instruct them as to the legal significance of a release in the hospital record which the plaintiff had signed"; that the official stated that he went to the judge with the jurors' request, and, after informing the judge that the attorneys for defendant were not in the courtroom, the official was told by the judge to tell the jurors that they would have to deliberate without further instructions; that after the jury returned the verdict for defendant, affiant and his associate talked with some of the jurors and were told substantially the same things that were told by the court official. The second affidavit is to like effect, with the added statement that affiant subpoenaed all the jurors and, on the day set for hearing the motion for new trial, the court refused to permit the jurors to testify.

We are of opinion that the court cannot be put in error on this showing for overruling Ground 12.

■ The only matter in the affidavit tending to prove that the jury requested further instructions is hearsay. Without deciding that the jurors could or could not testify as to any message they sent to the court, we see no reason why the official who took the message could not have been called to testify. At the outset, we are faced with a total lack of competent evidence to prove that the jury requested any additional instructions.

■ If the affidavits should be regarded as competent, they show that, at the time the jury made their request, counsel for defendant were not in the courtroom and did not return there for an hour after the request was made. The court would have erred in giving additional instructions in the absence of counsel. Kuhl v. Long, 102 Ala. 563, 15 So. 267; Feibelman v. Manchester Fire Assurance Co., 108 Ala. 180, 19 So. 540.

The affidavit states that the jurors " * * * wanted to have the Judge instruct them as to the legal significance of

a release in the hospital record which the plaintiff had signed". In plaintiff's Exhibit 1, there does appear a form of release purporting to have been signed by plaintiff. In the absence of a request from one of the parties, it may be doubted that the court could have, without error, instructed the jury "as to the legal significance" of the release. § 270, Title 7, Code 1940.

Appellant cites Ulrich v. Schwarz, 199 Wis. 24, 225 N.W. 195, 63 A.L.R. 886, where it was held to be error for the trial court to refuse to instruct the jury as to what constitutes a nominal amount, when the jury, after retiring to the jury room, made inquiry seeking that advice. Without committing ourselves to that holding, we are of opinion that the inquiry there may be distinguished from the inquiry here. In Ulrich, the request was for definition of an expression the court had used in the charge. In the case at bar, the request was for instruction as to "the legal significance of" part of the evidence.

In any event, the affidavits in the instant case disclose that plaintiff's counsel had knowledge of the jury's request after it had been refused by the court and after defendant's counsel had returned to the courtroom. Plaintiff states in brief:

"It should be noted at this point that all the attorneys who participated in the trial of this case were present with the bailiff whom the jurors had requested to transmit their request to the trial judge for the further instructions, just outside the courtroom wherein the trial had transpired, a considerable length of time prior to the jury announcing their verdict. Therefore, there was no reason whatsoever for the trial judge to refuse to give to the jury the instructions which they had requested."

■ The affidavit does not show, however, that plaintiff's counsel made any request to the court to instruct the jury, or informed the court that defendant's counsel were present, although plaintiff's coun-

sel had knowledge of the jury's request. It has been held by this court that it will not reverse a judgment of the circuit court for its refusal to give a charge asked, unless it appear that such charge was put in writing as the statute provides. Jacobson v. State, 55 Ala. 151; Green v. State, 66 Ala. 40. See also: Mullins v. Lemley, 205 Ala. 593, 88 So. 831; Krasner v. Gurley, 248 Ala. 686, 29 So.2d 224; Keel v. Weinman, 266 Ala. 684, 98 So.2d 611; § 273, Title 7, Code 1940. If there can be no reversal for failure to give a charge where the request is made orally, then it does not appear that a reversal should be allowed where the party complaining has made no request at all. Assignment 1 is without merit.

■ Assignment 2 recites:

"2. The Trial Court erred in overruling (Tr. 15–16) the plaintiff's motion for a new trial (Tr. 9–11) on ground No. 7 thereof as follows:

" '7. For that the Court erred in permitting defendant, over plaintiff's objection, to elicit answers from plaintiff to hypothicial [sic] questions relative to serious chest disease, at which time there was no evidence of a chest disease.' "

The record of the cross-examination of the plaintiff shows the following:

"Q   And I will ask you if it is not a fact that at the time if Dr. Stanton had told you, as your family physician, that while you were in there for a hernia operation, that he had discovered something seriously wrong with your chest that needed immediate attention, you would have told him to go ahead, wouldn't you?

"A   I don't know.

"MR. NICHOLSON: We object to that, Judge, that has no bearing on this case whatsoever.

"THE COURT: I will overrule the objection."

There appear further questions propounded to plaintiff relating to a chest condition, and later the court said:

"THE COURT: I sustain the objection. I misinterpreted the question he asked. I would have sustained the objection, if you hadn't made an objection. Go ahead. I sustain the objection now.

"MR. NORMAN: We except."

The assignment fails to point out the question complained of. There are no questions on the pages of the transcript referred to in the assignment of error. On pages 53 and 54 of the transcript, there are three questions which mention chest trouble. The assignment is too general and indefinite. H. B. Claflin Co. v. Rodenberg, 101 Ala. 213, 13 So. 272; Shelley v. Clark, 267 Ala. 621, 103 So.2d 743.

■ The question copied above is the first question asked concerning chest condition. The plaintiff did not object until after the question had been answered. There is nothing to indicate that plaintiff was prevented from making timely objection. Error cannot be predicated on court's overruling objection interposed only after responsive answers to the questions disclosing the nature of the evidence to be introduced. Adams Hardware Co. v. Wimbish, 201 Ala. 547, 78 So. 901; Lusk v. Wade, 259 Ala. 555, 67 So.2d 805. Assignment 2 is not well taken.

Assignment 3 is that the court erred in overruling Ground 2 of the motion, which is that "the verdict is not sustained by the great preponderance of the evidence".

The issue of fact in this case is whether plaintiff consented or not. Plaintiff testified to the effect that he had consented to the operation on his left side and had not, at any time, consented to the operation on his right side.

On the night before the operation, defendant made an examination of plaintiff. Defendant contends that, as a result of that examination, he became of opinion that the operation should be on plaintiff's right side instead of his left, and that plaintiff, on being so advised, agreed to the change. Defendant testified as follows:

"Q All right, sir. Will you tell us, please sir, everything in substance that transpired between you and Mr. Bush, from the time you went into the operating room, until you parted company on that occasion? Not the operating room, I mean where you examined him?

"A Where I examined him? Well, I arrived on the floor and Fred was sitting in the hall, which surprised me. I thought I would find him in bed. He explained there had been some mix-up on the rooms, so we went to the eye examination room on the 10th Floor, and I wanted to make sure that he had recovered from his cold, and also to . . check his hernia again, to make sure what the status was, just before surgery. I examined his nose and throat and listened to his heart and lungs, checked his inguinal rings. First, I checked the one on the left, then I checked the one on the right, and I said, Fred, that is the worst one, I think we should do it first.

"Fred then said, all right, that is what I want. And that was all there was to it. That is the sum and substance of what was said."

On cross-examination, defendant testified further:

"Q Now, doctor, when you were in the eye clinic, that examination on the night before the operation, did you, at any time, say to Fred that you were going to operate on the right side?

"A I did not. However, I said this, if I might repeat. I examined the left and the right; when I got through with the right, I said, Fred, and I kind of laughed, this is the worst side, and I think we should do it first."

An issue of fact was thus presented to the jury, who resolved the issue in favor of defendant. The decision of the trial court, refusing to grant a new trial on the ground of the insufficiency of the evidence, or that the verdict is contrary to the evidence, will not be reversed, unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust. Cobb v. Malone, 92 Ala. 630, 635, 9 So. 738. Under the foregoing rule, we are not clearly convinced that the preponderance of the evidence against the verdict is so decided that it is wrong or unjust. Ground 2 of the motion was overruled without error.

Affirmed.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.