RAMBOW, Respondent, vs. WILKINS and another, Appellants.

*April 2—May 5, 1953.*

For the appellants there was a brief by *Geffs, Geffs, Block & Geffs* of Janesville, and oral argument by *Jacob Geffs.*

For the respondent there was a brief by *Jeffris, Mouat, Oestreich, Wood & Cunningham,* and oral argument by *Harry F. Knipp,* all of Janesville.

*George H. Murwin* of Janesville, guardian *ad litem,* for Milburn Meckley.

FAIRCHILD, J. The defendant Meckley, the driver of the car in which Miss Rambow was a guest, does not, by an appeal to this court, challenge the judgment based on the verdict finding him guilty of negligence in the matter of management and control of his automobile and in respect to the speed at which he was driving, and that each failure was a cause of the accident. Testimony, to which reference will later be made was presented at the trial in a deposition made by Meckley.

As plaintiff's cause of action against Wilkins rests on whether Wilkins failed to have his car lighted by a taillight, we are primarily concerned as to the existence of a jury issue on that question. "While purely negative testimony is not enough to raise an issue of fact for the jury, testimony negative in form may, under certain circumstances, be considered to be positive in substance and sufficient to raise an issue of fact." *Zenner v. Chicago, St. P., M. & O. R. Co.* 219 Wis. 124, 126, 262 N. W. 581. We must, therefore, analyze the testimony given by Meckley and the witness Mrs. Raymond on which plaintiff's case depends, with this rule in mind. In order that testimony negative in form may be sufficient to raise a jury issue, it must appear that the witness so testifying was in a position where he or she could see; that the witness' attention and senses were directed to ascertaining whether the questioned fact existed; and that he is able to affirm that it did not exist. *Zenner v. Chicago, St. P., M. & O. R. Co., supra; Ives v. Wisconsin Central R. Co.* 128 Wis. 357, 107 N. W. 452; *Anderson v. Horlick's Malted Milk Co.* 137 Wis. 569, 119 N. W. 342.

It is charged that Wilkins parked his car in a position in which he was required by law to have displayed on the rear of his car at least one lamp so constructed and placed as to show a red light from the rear plainly visible under normal atmospheric conditions from a distance of 500 feet to the rear of said vehicle. Sec. 85.06 (2) (b), Stats. 1947. The

evidence with relation to the existence of such a light offered by the defendant is positive. The defendant Meckley frankly admits that because of existing conditions he was not able to see the center line of the highway, that he was interested in meeting and avoiding a car with bright headlights standing in the middle of the road. He says he could see only the front of two cars facing him. The Wilkins car was not in front of him but to his right and on the shoulder facing in the direction that Meckley was driving. Meckley was asked the following question, "As a matter of fact, the Wilkins car may have had a taillight on as you approached it in your vehicle?" Answer: "It could have had one, but I didn't see one." He testified to the effect that "The fact I did not see Wilkins' car had a lot to do with my reason for believing I was blinded. I was thinking about how to get by the two cars that were facing me without getting into any trouble." After testifying that the lights of the two cars facing him did shine in his eyes and interfere with his vision to such an extent that he could not see beyond them, he was asked, "Mr. Meckley, you do not claim Mr. Wilkins' taillight was not on as you approached?" Answer: "I did not say it was not on; I said I didn't see it."

The other witness, Mrs. Raymond, who was riding in Meckley's car, after describing the highway as icy, testified that she saw two cars facing them with headlights on, one "on dim" and one "on bright." She continued to look straight ahead. Meckley was concerned with avoiding injuring anyone who might be getting out of or coming around the car that was standing in the center of the road. There is no evidence that either Meckley or Mrs. Raymond were paying any attention to or saw the Wilkins car until after they had passed the car which stood in the middle of the road. Mrs. Raymond testified to the effect that when Meckley passed this bright light the Wilkins car was there, and he (Meckley) either had to hit it or swerve; and he swerved.

She was asked, "Now, at the time from the top or crest of the hill up to and including the time of the accident, did you see any red taillight on the car which is known as the Wilkins car?" and she answered, "No, I didn't." (She did not see the Wilkins car until they passed the car with the bright lights.) Then this question was put, "Had there been one, would you have seen it?" and she answered, "Yes, I think I would have seen it if there had been one."

This evidence offered by the plaintiff is negative in form, and as its nature and quality do not supply the substance necessary to make it capable of being effective as a matter of law in meeting the requirement of proof resting upon the plaintiff, it cannot be considered to be positive in substance and sufficient to raise an issue of fact with respect to the fact described in the positive testimony of the three witnesses who testified that such a light was in place at the time of the accident.

In judging the testimony presented by plaintiff, even though negative in character, we have given consideration to all the evidence of the circumstances bearing upon the plaintiff's cause of action, and determined from all the testimony that the evidence does not sustain the finding that there was no taillight burning on Wilkins' car immediately before the collision. We have referred to the testimony given by Joan Raymond and have analyzed her testimony, together with that of Meckley, having in mind that there is a requirement that the witness be so situated that in the ordinary course of events he or she would have seen that no taillight was on the Wilkins car. The plaintiff's testimony, as we have pointed out, is so negative in substance as to be incapable of raising a jury issue with respect to the testimony now to be referred to given by Wilkins, Elmer Kuhnle, and Ruth Kuhnle. In considering the position in which the witnesses for the plaintiff were and the opportunity for observing, we have had in mind the hazard confronting these young

people as they came down the hill facing lights of two cars and their manifest concern to avoid collision with either of those cars, and that neither the driver nor Mrs. Raymond noted the position of the Wilkins car until they had passed through what may be termed the blind spot caused by the headlights on the car in the middle of the road, and they saw then for the first time the Wilkins car. The positive testimony which controls this case is that given by the witnesses who were in a position to note the taillight and who were interested in the movements of the car which displayed the taillight. Mrs. Kuhnle, in effect, "I saw it [the Meckley car] collide with the Wilkins car. Wilkins was parked off of the concrete part of the highway. When Wilkins was pulling us up the highway I observed that he had a taillight. My memory is a little vague but I am pretty sure it was there." Her husband, Elmer Kuhnle, testified in effect, "I first saw Wilkins that night on Highway 14 about one quarter of a mile east of where the accident happened. My car was not working and he tried to help me over the hill toward Janesville. It was icy and he could not push me up the hill; then he hooked on with a chain and tried to pull me over the hill and got somewhat near the top of the hill. Wilkins had a taillight on. I observed it at the cabins; when he was pushing me and when he was pulling me. After we could go no further I backed my car back to the gravel-storage place where we left the car; that was on the north side of the road; my car was 15 to 20 feet off of the concrete. Wilkins parked east of me on the south side of the road. After I got out of my car I noticed the taillight was burning on Wilkins' car. He was parked 35 to 40 feet east of me. He parked on the south shoulder of the road; no part of his car was on the concrete. His taillight was lit."

The fourth car, the headlights of which confused the driver of the car in which Mrs. Raymond was riding, moved away from the scene of the accident and was not heard from there-

after. That car was westbound. Meckley was driving east. It appeared from the evidence that the right rear fender of Meckley's car struck the rear left fender of Wilkins' car. The taillight was on the left rear fender, which was struck by the right rear of Meckley's car. A witness, Arthur N. LeFeber, who lived near the scene of the accident, responded to a call for help. He testified in effect, "I don't know Wilkins or Kuhnle. At the sheriff's office I told what I knew to an attorney by the name of Knipp. I noticed a damaged taillight on the Wilkins car; it was not working; it had been smashed. I remember talking to a truck driver about the taillight being smashed." We call attention to this testimony because Mrs. Raymond testified in effect, "I looked at Wilkins' car and it appeared to be 36 inches on the traveled portion of the highway up to where the back taillight was; we looked and there was no taillight on Wilkins' car after the accident; we looked around and back of the car and saw no taillight or any parts of a taillight, but we didn't look under the car or anything like that; we looked on the side next to the road and saw no taillight or glass but we didn't look on the other side of the car; . . ."

The defendant Wilkins testified in effect, "Prior to the accident there was a taillight on my car and it was working. I had checked it prior to the accident. I also had a stop light that went on when I set my brakes." He was then asked, "How do you know it had been working?" and he answered, "Because I noticed when I had my head out of the window I could see the light get brighter when I set my brakes." Further testimony of Wilkins was to the effect that, "I looked and saw my taillight was burning when I was turning around in the Funk driveway. Both my taillight and stop light was working at the Funk driveway. I am positive that my taillight did not get damaged in any way by the chain that I had hooked around the back bumper." He also testified

that after the accident he put a flashlight on his car in place of the taillight.

It follows that, as the testimony that must be relied upon by the plaintiff in order to recover is negative in substance and character, it is incapable of overcoming the positive testimony offered by the defendants to show the presence of "at least one lamp so constructed and placed as to show a red light from the rear plainly visible under normal atmospheric conditions from a distance of 500 feet to the rear of such vehicle." (Sec. 85.06 (2) (b), Stats.)

The testimony referred to, judged in the light of all the surrounding circumstances, requires a holding that the court below was in error in denying the motions after verdict made by defendants Wilkins and Ohio Casualty Insurance Company to change the answer as to the failure of having a lamp on said car showing a red light from the rear from "Yes" to "No." Having reached this conclusion, we find it unnecessary to treat with other points raised by appellants. The judgment below must be reversed.

*By the Court.*—Judgment reversed, cause remanded with instructions to change the answer of the special verdict with respect to failing to have a taillight burning from "Yes" to "No;" and the answer with respect to such failure being the cause of the accident from "Yes" to "No;" and render judgment accordingly dismissing plaintiff's complaint.