ITallows, J.
In his closing argument to the jury, the plaintiff’s counsel used a blackboard to display and suggest to the jury a mathematical formula for the computation of damages for pain and suffering. Before arguments, the trial court stated it would permit the use of the blackboard for such purpose. Objection was made by counsel for the defendant. At'the close of the plaintiff’s argument the defendant desired to use the blackboard and the plaintiff’s counsel was allowed to take a 'flash-bulb photograph of the blackboard in the presence of the jury. The photograph was not submitted to the jury and it was understood that it was taken so that it could be made a part of the record in event of an appeal.
*607 The.plaintiffs damages were set forth on the blackboard as shown in the footnote.[1] The record does not disclose the language used by the plaintiff’s counsel in his summation to the jury. The defendant’s brief states, and it is not denied, that the plaintiff’s counsel argued to the jury that he multiplied the $1.50 per day by 365 days and then multiplied that sum by 20, which was the life expectancy of the plaintiff in years, and thereby arrived at the total of $10,950. While we would prefer to have before us a transcript of the language of the summation arguments with respect to the blackboard figures for pain and suffering, the issue is adequately raised and briefed. The present record is sufficient to permit this court to determine the propriety of permitting counsel for the plaintiff to present to the jury a mathematical formula setting forth on a per diem basis the amount determined by the plaintiff as her damages for pain and suffering.
This assignment of error raises a question over which there has been considerable controversy of late in other states. The exact point has apparently not been determined by this court. However, we have held that closing arguments of counsel are to be confined to facts in the evidence or to what may be properly inferred from the evidence. Brown v. *608 Swineford (1878), 44 Wis. 282. The mentioning of figures or a range of figures for such damages by the trial court in its instruction has been disapproved. Bergeron v. Peyton (1900), 106 Wis. 377, 82 N. W. 291; Candrian v. Miller (1898), 98 Wis. 164, 73 N. W. 1004; Ulrich v. Schwarz (1929), 199 Wis. 24, 225 N. W. 195. Mentioning by the trial court in its instructions of a dollar amount which the jury should not exceed in its determination has been held error. Otto v. Milwaukee Northern R. Co. (1912), 148 Wis. 54, 134 N. W. 157; Hupfer v. National Distilling Co. (1906), 127 Wis. 306, 106 N. W. 831; Jacoby v. Chicago, M. & St. P. R. Co. (1917), 165 Wis. 610, 161 N. W. 751. The rationale of these cases is that such comment by the trial court invades the province of the jury, which under our system of jurisprudence is to make the initial determination of unliquidated damages. If such an award is the result of passion, prejudice, failure to follow instructions, or unreasonable because of insufficiency or excessiveness, the trial court and this court on appeal may set it aside or modify it.
We have disapproved statements of counsel to the jury that a certain sum of money would not compensate for the injuries sustained. Larson v. Hanson (1932), 207 Wis. 485, 489, 242 N. W. 184 (“There is not a man of you that would trade his left hip for $30,000.”); Taylor v. Chicago & N. W. R. Co. (1899), 103 Wis. 27, 30, 79 N. W. 17 (a statement to the effect that the plaintiff was not asking too much when she measured her damages at $25,000 and that no amount of money could place her where she was before receiving the injuries complained of); Higgins v. Stang (1928), 195 Wis. 498, 218 N. W. 832 (in effect, take all the gold in all the banks of the world and pile it up at the feet of the plaintiff and offer it to him and it would not compensate him for the injuries he sustained); Hardware Mut. Casualty Co. v. Harry Crow & Son, Inc. (1959), 6 Wis. (2d) 396, 94 *609 N. W. (2d) 577 (argument to the effect that the defendant’s counsel would not place his leg under a truck wheel for any amount of money). When an attempt was made before this court to compare verdicts for pain and suffering on an hourly basis to demonstrate that damages were excessive, this court stated in Hamilton v. Reinemann (1940), 233 Wis. 572, 582, 290 N. W. 194, “We think that defendants are too mathematical in their approach to this subject, and that conscious pain and suffering cannot be reduced to an hourly basis. It is extremely doubtful if it can be reduced to any formula that will constitute a satisfactory rationale for other cases.”
The test for determining damages for pain and suffering at common law and in this state has been what the jury considers will reasonably compensate the plaintiff for the pain and suffering considering its nature, intensity, and extent as disclosed by the evidence. Within the last ten years some counsel in this state have developed a trial technique of appealing to the jury to follow their mathematical formulas in determining damages for pain and suffering. We take notice that a few of our trial judges have allowed this type of argument and the use of a blackboard or a chart for that purpose. The majority of the judges have not permitted such arguments. Likewise, among the other jurisdictions which have considered this problem there is a sharp difference of opinion, some disapproving,[2] and others approving.[3] Some *610 of the leading cases, but by no means all, are found in the footnotes. The arguments, pro and con, are summarized in Ratner v. Arrington (Fla. 1959), 111 So. (2d) 82, 88, as follows:
“Authorities opposing per diem amount arguments as to damages for pain and suffering give varied reasons: (1) That there is -no evidentiary basis for converting pain and suffering into monetary terms; (2) that it is improper for counsel to suggest a total amount for pain and suffering, and therefore wrong to suggest per diem amounts; (3) that to do so amounts to the attorney giving testimony, and expressing opinions and conclusions on matters not disclosed by the evidence; (4) that juries frequently are misled thereby into making excessive awards, and that admonitions of the court that the jury should not consider per diem arguments as evidence fail to erase all prejudicial effect; (5) that following such argument by plaintiff, a defendant is prejudiced by being placed in a position of attempting to rebut an argument having no basis in the evidence, with the result that if he does not answer plaintiff’s argument in kind he suffers its effect on the jury, but if defendant does answer in kind he thereby implies approval of the per diem argument for damage determination for pain and suffering.
“Authorities approving such arguments give numerous reasons: (1) That it is necessary that the jury be guided by some reasonable and practical considerations; (2) that a trier of the facts should not be required to determine the matter in the abstract, and relegated to a blind guess; (3) that the very absence of a yardstick makes the contention that counsel’s suggestions of amounts mislead the jury a questionable *611 one; (4) the argument that the evidence fails to provide a foundation for per diem suggestion is unconvincing, because the jury must, by that or some other reasoning process, estimate and allow an amount appropriately tailored to the particular evidence in that case as to the pain and suffering or other such element of damages; (5) that a suggestion by counsel that the evidence as to pain and suffering justifies allowance of a certain amount, in total or by per diem figures, does no more than present one method of reasoning which the trier of the facts may employ to aid him in making a reasonable and sane estimate; (6) that such per diem arguments are not evidence, and are used only as illustration and suggestion; (7) that the claimed danger of such suggestion being mistaken for evidence is an exaggeration, and such danger, if present, can be dispelled by the court’s charges; and (8) that when counsel for one side has made such argument the opposing counsel is equally free to suggest his own amounts as inferred by him from the evidence relating to the condition for which the damages are sought.”
Many cases are cited in the briefs submitted which do not squarely hold either for or against the use of a mathematical formula. For instance, in Imperial Oil, Ltd., v. Drlik (6th Cir. 1956), 234 Fed. (2d) 4, 352 U. S. 941, 77 Sup. Ct. 261, 1 L. Ed. (2d) 236, the trial in an admiralty case used the mathematical formula in determining damages. The circuit court stated that the method was novel but did not result in a verdict which was manifestly unjust as a matter of law, and approved the verdict. The problem has been variously treated in legal literature.[4]
*612 ■ We believe that the arguments advanced disapproving the use of a mathematical formula are more persuasive. The use of a mathematical formula is pure speculation by counsel, which is not supported by the evidence and presents matters which do not appear in the record. The formula may be used to arrive at a gross figure by taking an arbitrary amount of money per day and multiplying it by the number of days in a year, times the number of years of the life expectancy of the plaintiff. Logically, if this method were followed, the gross amount arrived at should be discounted to its present worth. Seldom is pain constant for the entire life expectancy of the plaintiff, and if the evidence showed that it would be, the intensity of pain normally varies. It is true that the formula can be tailored to fit the evidence in cases where pain is sporadic or intermittent, by taking into account only the number of days which the evidence shows future pain might be suffered. This use of the formula is still subject to the basic criticism that the formula must always include an arbitrary dollar amount per day or other period of time, which has no foundation in the record. It is argued that the per diem amount of money is relatively so small that it is obviously reasonable. Such an argument begs the question. The fact is such amount or valuation is not in the evidence and, indeed, could not be.
The formula is sometimes used to illustrate or to prove the reasonableness of a certain amount of money. The formula is then used in reverse to show that the lump sum is not unreasonable because it represents only a few dollars per month or per day. Generally, in determining the lump sum, the formula is applied as in the first method. Segmentation of a lump sum to show its reasonableness because the per diem amount is small is subject to the same criticism as the other method of use. There is no mathematical way of formulating a formula which will represent all the varying factors in *613 volved in pain and suffering in a given case without making-assumptions of fact which are not in the evidence. The formula, rather than being an aid as claimed, would result in confusing the jury. The basic reasoning behind the use of any mathematical formula is not so much to aid, or even to persuade, the jury as it is to ultimately establish a fixed standard to displace the jury’s concept of what is a fair and reasonable amount to compensate for the pain and suffering sustained as shown by the evidence in the light of the common knowledge and experience possessed by the jury of the nature of pain and suffering and the value of money.
The difficulty in using a mathematical formula to measure damages for pain and suffering is inherent in the nature of pain and suffering. It cannot be measured by any such mathematical standard. Pain and suffering has no market price. It is not bought, sold, or bartered. It has no equivalent in a commercial sense. We cannot agree with the reasoning in the Ratner Case, supra, that the absence of a fixed rule for the measurement of pain and suffering supplies a reason for the use of a mathematical formula. The present rule for measuring damage is as fixed as the nature of the subject matter will permit. True, counsel should be entitled to a reasonable latitude in argument and in commenting on the evidence, its nature and effect, and may make proper inferences which may reasonably arise from the evidence. However, we fail to see where a mathematical formula or a pain-on-a-per-diem or per-month basis has its basis in the evidence, or in logical inferences from the evidence. Such arguments are beyond the scope of proper argumentation.
The absurdity of a mathematical formula is demonstrated by applying it to its logical conclusion. If a day may be used as a unit of time in measuring pain and suffering, there is no logical reason why an hour or a minute or a second could not be used, or perhaps even a heartbeat, since we live from *614 heartbeat to heartbeat. If one cent were used for each second of pain, this would amount to $3.60 per hour, to $86.40 per twenty-four-hour day, and to $31,536 per year. The absurdity of such a result must be apparent, yet a penny a second for pain and suffering might not sound unreasonable. The principle is the same, whether one uses a second, an hour, or a day as the basic unit of time, because to the unit of time used one must assign some money value which has no foundation in the evidence. We see no difference in using the mathematical formula for illustrative purposes and using it to determine the reasonableness of the amount sought as damages. The use of the formula was prejudicial error.
We find no objection to the use of a blackboard as an aid to illustrate or demonstrate in the course of proper argumentation. What the ear may hear, the eye may see. PIowever, the taking of the photograph of the blackboard in the presence of the jury should not have been permitted. It would have been an easy matter to have excused the jury. Photographing the blackboard, whether it caused any inconvenience to the jury or not, could not fail to unduly impress the jury with the importance of the figures and argument of the plaintiffs counsel. We believe it was proper for the plaintiff’s counsel to state and argue the amount of future pain and suffering which he believed the evidence would fairly and reasonably sustain. This amount cannot be referred to as the amount in the ad damnum clause. The ad damnum clause has no probative value and is no part of the evidence. It is common knowledge that the ad damnum clause is the equivalent of the asking price and is inserted in the complaint before any evidence is in the record.
Counsel for both the plaintiff and the defendant may make an argumentative suggestion in summation from the evidence of a lump sum dollar amount for pain and suffering which they believe the evidence will fairly and reasonably support. *615 Counsel may not argue such amount was arrived at or explained by a mathematical formula or on a per day, per month, or on any other time-segment basis.
The defendant contends the verdict of $13,500 was excessive and perverse. Perversity is predicated on the fact that there was testimony that an employee of the defendant was “sassy” to the plaintiff when she called the defendant to report the accident. About twenty minutes after the jury retired, the foreman appeared and asked whether this testimony had been stricken because one juror thought it had been. The court informed the foreman the testimony had not been stricken. It was argued this, evidence was immaterial in determining damages and the incident indicated the jury was considering it to the prejudice of the defendant, as evidenced by the amount of the verdict. This contention considered alone would not be sufficient to establish perversity.
The question of excessiveness requires a brief resumé of the facts. The plaintiffs injury consisted of a tennis elbow, described as an external epicondylitis, or spur, on the outer side of the elbow. She testified her right arm hurt continually for six months after the accident and thereafter continued to pain her like a slight toothache. At the time of the trial the plaintiff took medication for pain about once a month. The medical testimony was to the effect that, as a result of her injury, the plaintiff would have pain whenever she gripped an object with her right hand, especially if there was a grasping and a twisting motion. There would also be pain when there was pressure to the elbow. Both doctors testified there would be intermittent pain in the future caused by her use of her right hand in that manner. The plaintiff’s employment required her to grasp trays, write, and to use heavy shears, which she could not do for about two months after she returned to work. The plaintiff lost six and one-half days’ work immediately following the accident. How *616 ever, she had no other wage loss up to the time of the trial. She testified she could not do her housework and there was a loss of strength in the grip of her right hand. There is no doubt that the plaintiff’s injury is permanent and the use of her hand and arm will aggravate the condition. It is argued that her earning capacity has therefore been impaired, and she is entitled to compensation for such loss even though there was no specific showing of wage loss up to the time of trial or in the future. Loss of earning capacity was argued on the basis of 40 cents and 20 cents an hour for certain periods of time. There is no evidence to support this. The plaintiff’s medical and drug expense amounted to $348.24. The balance of the award of $13,500 was for damages for pain and suffering, loss of wages, disability, and loss of earning capacity.
In view of the evidence, we believe that the amount of the verdict is excessive and cannot be sustained under any view of the evidence. There is no doubt that the jury was unduly influenced by the mathematical type of argument made by the plaintiff’s counsel. While an award that has been approved by the trial court is entitled to more consideration than one which is not, this case does not fall under that rule because of the error in allowing the plaintiff’s counsel to make the type of summation argument he did to the jury. The facts suggest the application of the rule laid down in Puhl v. Milwaukee Automobile Ins. Co. (1959), 8 Wis. (2d) 343, 99 N. W. (2d) 163, and Behringer v. State Farm Mut. Automobile Ins. Co. (1959), 6 Wis. (2d) 595, 95 N. W. (2d) 249, rather than the rule in Kincannon v. National Indemnity Co. (1958), 5 Wis. (2d) 231, 92 N. W. (2d) 884, but we need not decide this because there must be a new trial.
The defendant requested the jury be instructed, before finding for the plaintiff, that it must find in effect that the *617 door of the defendant’s vehicle did in fact close on the plaintiff while she was boarding the vehicle and that the closing of the door was due solely and proximately to the causal negligence of the defendant. The requested instruction was not given. However, the jury was instructed, “If you find from a preponderance of the evidence that the accident occurred in the manner described by the plaintiff, and that such accident was proximately caused by the negligence of the driver of the defendant’s bus, then you should find for the plaintiff,” and the duty of the bus driver was adequately covered. The plaintiff testified that the bus door closed on her arm as she was attempting to board the bus, which moved a foot or a foot and one half before she was able to withdraw her right foot and pull her arm out from between the bus doors. She also testified she stated, “Oops, you closed the door on my arm,” which was heard by one of the witnesses who, however, did not see the plaintiff until after hearing her voice. Another witness, who did not particularly observe the plaintiff while she attempted to board the bus or where the plaintiff’s arm was, did observe the plaintiff write down the number of the bus and the time of day. The negative testimony of what these two witnesses did not see was insufficient to overcome the plaintiff’s positive testimony. Jaster v. Miller (1955), 269 Wis. 223, 69 N. W. (2d) 265; Rambow v. Wilkins (1953), 264 Wis. 76, 58 N. W. (2d) 517.
We do not see where any real issue was raised over whether the accident in fact happened. The instruction given was not erroneous and covered the issues. It required a finding by the jury not only that the accident occurred, but in the manner described by the plaintiff, i.e., that the door closed on her arm while she was boarding the bus. We see no reason to relitigate the question of the defendant’s negligence, and therefore there should be a new trial on the question of *618 damages only. It is not necessary to consider the other points raised by the defendant as they concern the question of damages.
The defendant’s request for printing costs of the brief in excess of 50 pages is denied.
By the Court. — Judgment reversed, and a new trial granted on the issue of damages only.

“MEDICAL EXPENSE
43.74 + 210.00 + 10.00 + 84.50 = 348.24
PAIN $1,50 10,950.00
EARNING CAPACITY
896.00 896.00
8288 5626.00
PAIN 3000.00
$20,827.53”

 Botta v. Brunner (1958), 26 N. J. 82, 138 Atl. (2d) 713; Cooley v. Crispino (Conn. 1958), 147 Atl. (2d) 497; Henne v. Balick (Del. 1958), 146 Atl. (2d) 394; Faught v. Washam (Mo. 1959), 329 S. W. (2d) 588; Certified T. V. & Appliance Co. v. Harrington (1959), 201 Va. 109, 109 S. E. (2d) 126.

 McLaney v. Turner (1958), 267 Ala. 588, 104 So. (2d) 315; Braddock v. Seaboard Air Line R. Co. (Fla. 1955), 80 So. (2d) 662; Ratner v. Arrington (Fla. 1959), 111 So. (2d) 82; Boutang v. Twin City Motor Bus Co. (1956), 248 Minn. 240, 80 N. W. (2d) 30 (for illustrative purposes only, but not for determining the reasonableness of the award); Flaherty v. Minneapolis & St. Louis *610 R. Co. (1958), 251 Minn. 345, 87 N. W. (2d) 633; Four-County Electric Power Asso. v. Clardy (1954), 221 Miss. 403, 73 So. (2d) 144; Johnson v. Brown (Nev. 1959), 345 Pac. (2d) 754 (for illustrative purposes, with admonition by court that remarks of counsel are not evidence); J. D. Wright & Son Truck Line v. Chandler (Tex. Civ. App. 1950), 231 S. W. (2d) 786; Olsen v. Preferred Risk Mut. Ins. Co. (Utah 1960), 354 Pac. (2d) 575 (discretionary with trial court with instructions the use is lawyer's talk, not evidence or a substitute therefor); Jones v. Hogan (Wash. 1960), 351 Pac. (2d) 153 (trial court has discretion to limit argument and should admonish that counsels’ arguments are not evidence and the appellate court did not approve such arguments in general).

 43 Minnesota Law Review, 832; 28 University of Cincinnati Law Review, 138; 12 Rutgers Law Review, 522; 19 Ohio State Law Journal, 780; 4 Villanova Law Review, 137; 11 Alabama Law Review, 207; 36 Dicta, 373; 16 NACCA Law Journal, 237; 23 NACCA Law Journal, 255; 24 NACCA Law Journal, 252; 61 West Virginia Law Review, 302; Anno. 38 A. L. R. (2d) 1396, Prejudicial effect of trial court’s denial, or equivalent, of counsel’s right to argue case; Anno. 60 A. L. R. (2d) 1347, Per diem or similar mathematical basis for fixing damages for pain and suffering; 2 Belli, Modern Trials, 1958 Supp., p. 385, sec. 290; 3 Belli, Modern Trials, 1958 Supp., p. 445, sec. 324.