# COURT OF APPEALS
## DECISION
## DATED AND FILED

## September 30, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2020AP2030**
**2020AP2031**
**STATE OF WISCONSIN**

Cir. Ct. Nos. 2019TP18
2019TP19

**IN COURT OF APPEALS**
**DISTRICT IV**

---

IN THE INTEREST OF J.B., A PERSON UNDER THE AGE OF 18:

LA CROSSE COUNTY DEPARTMENT OF HUMAN SERVICES,

   PETITIONER-RESPONDENT,

 V.

B.B.,

   RESPONDENT-APPELLANT,

E.B.,

   RESPONDENT-CO-APPELLANT.

---

IN THE INTEREST OF A.B., A PERSON UNDER THE AGE OF 18:

LA CROSSE COUNTY DEPARTMENT OF HUMAN SERVICES,

   PETITIONER-RESPONDENT,

 V.

**B.B.,**

 **RESPONDENT-APPELLANT,**

**E.B.,**

 **RESPONDENT-CO-APPELLANT.**

---

   APPEALS from orders of the circuit court for La Crosse County: SCOTT L. HORNE, Judge. *Affirmed.*

   ¶1 GRAHAM, J.[1] B.B. and E.B. appeal orders entered by the circuit court terminating their parental rights after a jury found that their children were in continuing need of protection or services. B.B. and E.B. argue that, throughout the grounds phase of the proceeding, the guardian ad litem improperly invoked the children's best interests in the comments she made to the jury and the testimony she elicited from witnesses. Separately, B.B. argues that the circuit court violated her due process rights by holding the dispositional hearing via videoconferencing technology. I reject these arguments and affirm.

## BACKGROUND

   ¶2 B.B. is the mother and E.B. is the father of two young children, A.B. and J.B. I refer to B.B. and E.B. collectively as the parents, and to A.B. and J.B. collectively as the children, throughout this opinion.

---

[1] These appeals are decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version.

2

¶3      Prior to the termination of parental rights (TPR) proceedings at issue in this case, the children were twice adjudged to be in need of protection or services (CHIPS), removed from the parents' home, and placed in foster care. The court issuing the CHIPS order cited, among other reasons, concerns regarding the children's living conditions and the parents' mental health to support removal from the family home.

¶4      When it issued the most recent CHIPS order in March 2017, the court provided a written and oral explanation of the conditions that the parents would be required to meet for the children to be returned to their home.[2] These conditions required the parents to:

(1)  participate and cooperate with the development of the case plan;

(2)  manage their mental health by complying with treatment and following through as recommended;

(3)  consistently maintain safe housing;

(4) demonstrate parenting skills, including having patience and realistic expectations of the child, refraining from verbal or physical abuse, providing appropriate affection, maintaining a consistent routine, and providing adequate supervision of each child;

(5) follow through with all recommendations from the AODA assessment; and

(6)  maintain sobriety from alcohol and controlled substances.

¶5      The children continued to live with their foster parents, and in May 2019, the La Crosse County Department of Human Services (the Department) petitioned to terminate B.B.'s and E.B.'s parental rights on the grounds that the

---

[2] The court also warned the parents of the potential for grounds to terminate their parental rights, as required by WIS. STAT. § 48.356.

children were in continuing need of protection or services. *See* WIS. STAT. § 48.415(2).[3] The parents contested the petitions, and a guardian ad litem (GAL) was assigned to represent the children's best interests.

¶6 In Wisconsin, TPR proceedings follow a bifurcated procedure. The first stage is the grounds phase, consisting of a fact-finding hearing in which the fact finder determines whether there are grounds to find the parent unfit. *See* WIS. STAT. § 48.415. During the grounds phase, the fact finder "does not consider the best interests of the child standard." ***Waukesha Cnty. Dep't of Soc. Servs. v. C.E.W.***, 124 Wis. 2d 47, 61, 368 N.W.2d 47 (1985). If the parent is found to be unfit during the grounds phase, then the case proceeds to the second stage, the dispositional phase, in which the court considers whether it is in the best interests of the child to terminate the parent's rights. *See* WIS. STAT. § 48.426(2); *see also* ***C.E.W.***, 124 Wis. 2d at 60-61.

¶7 Prior to the commencement of the grounds phase, E.B. filed a motion in limine to prohibit the Department and the GAL from introducing evidence, expressing any opinions, or making any reference to the children's best interests during the fact-finding hearing. The parties agreed that the GAL could

---

[3] Wisconsin law allows parental rights to be terminated if a child is adjudged to be in "continuing need of protection or services." WIS. STAT. § 48.415(2). To satisfy this ground for termination, a petitioner must show that "the child has been adjudged ... to be in need of protection or services and placed ... outside his or her home pursuant to one or more court orders [under specified statutes] containing [the statutorily required termination of parental rights notice]," § 48.415(2)(a)1., that "the agency responsible for the care of the child and the family ... has made a reasonable effort to provide the services ordered by the court," § 48.415(2)(a)2.b.; and that "the child has been placed outside the home for a cumulative total period of 6 months or longer pursuant to [the court orders] ... and that the parent has failed to meet the conditions established for the safe return of the child," § 48.415(2)(a)3. Additional showings must be made in cases in which the child has been placed outside of the home for less than fifteen of the most recent twenty-two months; it is undisputed that these additional requirements did not apply in this case.

identify her role as representing the children's interests, but that she would not say that she represented the children's "best" interests. The parties also discussed other types of evidence that would be offered at the fact-finding hearing, including information about earlier CHIPS orders and the parents' prior interactions with the Department. The circuit court determined that some evidence about background facts should be admitted, including the Department's assessment of the family's needs and the history that resulted in the children being removed from the home in March 2017. Such evidence was directly relevant to whether the Department reasonably assessed the family's needs for court-ordered services and assisted the parents in satisfying the conditions of return. Nevertheless, the court cautioned that the parties should not "go into great detail … about what may have happened prior to the filing of the [most recent CHIPS] petition, prior removals, that sort of thing." As the court explained, "the focus of the trial needs to be on what's happened since" the most recent CHIPS petition was filed.

¶8     The case proceeded to the grounds phase, which consisted of a five-day fact-finding hearing before a jury. The jury was presented with considerable evidence regarding the parents' living conditions, relationships, continued mental health struggles, continued use of drugs and alcohol, and failure to consistently participate in services offered by the Department. I recite additional facts as needed in the discussion below, but for now, it suffices to say that, despite the services offered by the Department during the years that the children had been placed outside the home, there was uncontroverted testimony that the parents had not met the court-ordered conditions for safe return. The parents do not challenge the sufficiency of this evidence on appeal. Indeed, in his appellate briefing, E.B. acknowledges: "It is without a doubt that there is ample evidence to support a continuing need of protection and services ground ...."

5

¶9      The jury also heard opening statements and closing arguments by the GAL, who was also allowed to examine witnesses. The GAL's statement, argument, and witness examinations are the primary subject of the parents' appeals and will be discussed in detail below. The parents objected to some of the GAL's comments to the jury and witness questioning, and they twice moved for a mistrial. The circuit court overruled the objections and denied the motions.

¶10     The jury returned a verdict finding that the Department met its burden to prove grounds for the termination of B.B.'s and E.B.'s parental rights. One juror dissented.

¶11     Both parents requested to appear in person at the dispositional hearing, and the circuit court postponed the hearing at least twice in an effort to accommodate the request. However, as discussed in greater detail below, the court ultimately held the dispositional hearing using videoconferencing technology due to restrictions on in-person hearings resulting from the ongoing COVID-19 pandemic. Neither party called any witnesses, and after considering the dispositional factors, the court determined that it was in the children's best interests to terminate B.B.'s and E.B.'s parental rights. The court entered two written orders, one for each child, and the parents appeal those orders. B.B. and E.B. appealed separately, and each submitted their own appellate briefs.

## DISCUSSION

¶12     Although the parents frame their arguments in different terms, both parents' primary argument focuses on the first stage, the grounds phase, in which the circuit court held a fact-finding hearing and the Department had the burden to prove grounds to terminate the parents' rights. B.B. also argues that she was

denied a due process right to be physically present during the second phase, the dispositional hearing. I address these arguments in turn.

## I. The Grounds Phase

¶13 Our supreme court has considered the proper role of a GAL during proceedings to terminate parental rights. *C.E.W.*, 124 Wis. 2d at 70. As the court explained, "the fact finder—here the jury—does not consider the best interests of the child standard" during the grounds phase. *Id.* at 61. A GAL, who is appointed to represent the best interests of the children, may participate fully in the grounds phase and "has a right ... to argue the facts to the jury at the fact finding stage." *Id.* at 70. The court nevertheless added the following caveat: "The guardian ad litem cannot, of course, invoke the best interests of the child in statements to the jury." *Id.*

¶14 The issue in *C.E.W.* was whether a GAL could participate at all during the grounds phase. *Id.* at 61. The *C.E.W.* court did not address the proper remedy if the GAL makes comments or asks questions that arguably implicate the best interests of the child. That question was addressed in subsequent cases. In ***Door County Department of Health & Family Services v. Scott S.***, 230 Wis. 2d 460, 602 N.W.2d 167 (Ct. App. 1999), we explained: "Only when the court or the GAL *instruct* the jury that it should consider the best interests of the child is there reversible error." *Scott S.*, 230 Wis. 2d at 469 (emphasis added).

¶15 The parents argue that in this case, through her opening statement, closing argument, and witness examinations, the GAL improperly invoked the best interests of the children during the grounds phase, contrary to *C.E.W.* Neither parent asserts that the GAL explicitly instructed the jury to consider the best interests of the children. *Id.* at 469. Nevertheless, both parents contend that I

7

should vacate the orders terminating their rights and remand for a new fact-finding hearing as a result of what B.B. characterizes as the GAL's "pervasive emphasis on evidence and argument regarding the best interests of the children." For her part, B.B. contends that the circuit court erred by overruling the parents' objections to certain statements the GAL made during her opening and closing and certain testimony she elicited, and that the irrelevant and prejudicial arguments and testimony were grounds for a mistrial. For his part, E.B. asserts that the GAL's arguments and questioning resulted in a due process violation.

¶16    At the outset, I conclude that E.B. has failed to demonstrate a due process violation. He makes a passing reference to *Steven V. v. Kelley H.*, 2004 WI 47, ¶23, 271 Wis. 2d 1, 678 N.W.2d 856, for the general proposition that due process is implicated in TPR proceedings and parents must be provided with fundamentally fair procedures. I agree with that statement. However, E.B. does not develop an argument with citation to authority demonstrating that the process used in this case was fundamentally unfair. There is no indication that the court failed to provide E.B. adequate notice or an opportunity to be heard, and he cites no law for the proposition that any emphasis on the children's best interests would be a due process concern. I reject E.B.'s due process argument as undeveloped.[4] *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (courts need not consider undeveloped legal arguments).

---

[4] I also reject E.B.'s argument that his due process was violated because, during the parents' initial appearance in the TPR proceedings, the GAL asked the circuit court to admonish the parents about concerns regarding visitation. E.B. argues that no notice was provided that the GAL intended to raise this issue, and he contends that the GAL's request was an "impermissible infusion" of issues from the CHIPS case and the best interests of the children into the grounds phase of the TPR proceeding. I reject E.B.'s argument because it is undeveloped, and also because he does not demonstrate how any admonishment could result in prejudice, given that the jury was not present when it occurred.

¶17     Accordingly, I frame the issue as B.B. does—whether the circuit court erred when it denied the parents' objections to the GAL's comments and questioning and the motions to declare a mistrial.  B.B. argues that the GAL's statements were irrelevant and unduly prejudicial.

¶18     Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  WIS. STAT. § 904.01.  Even when relevant, evidence may be "excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  WIS. STAT. § 904.03.  Here, the jury was instructed to determine whether the Department made a reasonable effort to provide the services ordered by the CHIPS court, and whether the parents failed to meet the conditions established for their safe return.[5]  As stated above, the circuit court made a pre-hearing determination that the parties would have some latitude to get into background facts about the pre-removal living conditions at the parents' home, including the Department's assessment of the family's needs and the history that resulted in the children being removed from the home in March 2017.  Neither parent challenges this determination on appeal.

¶19     A circuit court's decision to admit or exclude evidence is discretionary, and it will be upheld on appeal if the court does not erroneously exercise its discretion.  *Parker v. Wisconsin Patients Comp. Fund*, 2009 WI App

---

[5]  The parents stipulated that the other elements were met, and the circuit court answered those questions on the special verdict.

9

42, ¶22, 317 Wis. 2d 460, 767 N.W.2d 272. Likewise, "[a] motion for a mistrial is addressed to the sound discretion of the [circuit] court, and its decision will not be reversed unless there has been 'a clear abuse of discretion.'" *Haskins v. State*, 97 Wis. 2d 408, 419, 294 N.W.2d 25 (1980) (quoted source omitted). A court properly exercises its discretion "when it examines the relevant facts, applies a proper standard of law, and reaches a reasonable conclusion using a demonstrated rational process." *Milwaukee Rescue Mission, Inc. v. Redevelopment Auth. of Milwaukee*, 161 Wis. 2d 472, 490, 468 N.W.2d 663 (1991). Upon review, an appellate court "look[s] for reasons to sustain a circuit court's discretionary decision." *Farmer's Auto. Ins. Ass'n v. Union Pac. Ry. Co*., 2009 WI 73, ¶32, 319 Wis. 2d 52, 768 N.W.2d 596.

¶20 For reasons explained below, I cannot conclude that the circuit court erroneously exercised its discretion with regard to the GAL's opening statement, witness examinations, and closing arguments. To be sure, there were some points where the GAL came close to crossing the line, and the court could have done more to rein in some specific comments the GAL made during her opening statement. Yet, I cannot conclude that any failure to do so affected the outcome of the case.

*The Opening Statement*

¶21 I begin by summarizing the GAL's opening statement, the parents' objections, and the circuit court's responses.

¶22 The GAL's opening statement was brief, encompassing just over three pages of trial transcript. During her opening statement, she made general references to A.B.'s and J.B.'s personalities, and stated that they had both waited

10

"a long time" for their parents "to make the adult choices needed to become healthier people and better parents."

¶23 The GAL stated that A.B. "thrives on consistency, routine, stability," which he did not receive in his parents' care. She noted that, since A.B. was placed in foster care, he "has been involved in karate and church events and other positive child-centered activities." She discussed A.B.'s behavioral problems, stating that he "can't always control how he reacts with his feelings because he didn't have good role models when he was younger." She stated that A.B. is "doing much better now" in foster care "as time goes on and his school has worked really hard to meet his needs."

¶24 At that point, E.B. objected on relevance grounds, and the circuit court overruled the objection. It concluded that "some context is appropriate" and that it did not "see anything prejudicial." The GAL then argued that A.B. "has grown tremendously through his counseling and that he uses the things that he's learned in counseling and from the people that support him to make good choices in his life."

¶25 When discussing J.B., the GAL described her as "more confident" than A.B. and not as emotionally needy. However, the GAL noted, "that wasn't how she was back in January of 2017," prior to removal. Neither parent objected to these statements.

¶26 At the outset of the second day of the fact-finding hearing, the parents moved for a mistrial based on the GAL's opening statement, contending that it was "based entirely" on the best interests of the children. The circuit court denied the motion as untimely, and also on the merits. As the court explained, "you can't divorce this trial from the needs of the children because part of the

11

argument is that the parents have not met the needs of the children. That's not a best interest argument; that's simply meeting the conditions that have been established for return of the children." Nevertheless, the court cautioned the parties that, going forward, they should keep their focus on the questions that the jury would be asked to answer:

> [I]n terms of testimony going forward, I think the focus has to be on the questions the jury will have to answer. And if the questions are framed in a way that we're focusing on the needs of the children, the conditions that have been established by the court to assure that the safety needs are being met and whether the parents have complied with those conditions, I think we'll be fine. If it appears that we're venturing into a best interest argument, then I assume there would be an objection and the court would rule appropriately. But at least at this point, particularly given the fact that the legal issues have been framed for the jury, I don't think there can be any confusion on that part about what the standards are.

¶27 I conclude that the circuit court appropriately exercised its discretion with regard to the specific objection made and with regard to this motion to declare a mistrial. At no time during her opening did the GAL instruct the jury to consider the best interests of the children. *See Scott S.*, 230 Wis. 2d at 469 ("Only when the court or the GAL *instruct* the jury that it should consider the best interests of the child is there reversible error." (emphasis added)). I also reject B.B.'s categorical argument that evidence about the pre-removal condition of the home is not relevant. As the circuit court aptly observed, to the extent that some of the argument about the children's needs would be relevant to their best interests, it is equally relevant to the conditions of return, which are based on the Department's assessment of the needs of the children that had been unmet in their parents' care. The GAL's opening statement foreshadowed the testimony from multiple witnesses about deficits in B.B.'s and E.B.'s parenting skills and the

court-ordered condition requiring the parents to demonstrate appropriate parenting skills and to consistently maintain safe housing.

¶28    I acknowledge that some of the GAL's statements suggest an unfavorable comparison between the parenting the children received from B.B. and E.B. and the parenting the children received in foster care.   I also acknowledge the persuasive authority that, during the grounds phase, the jury should not be presented with such comparisons, which have the potential to create a prejudicial effect.   *See* ***Wood Cnty. Human Servs. Dep't. v. Melanie M.***, No. 2013AP2814, unpublished slip op. ¶¶7-8 (WI App. Feb. 27, 2014).   The concern with such comparisons is that they may mislead the jury into believing that it is supposed to consider the children's best interests when determining whether the Department satisfied its burden of proof, or, alternatively, that such comparisons may sway the jury to disregard the jury instructions and find grounds for termination even if the Department fails to meet its burden of proof.

¶29    In this case, however, the comparisons made by the GAL were a small portion of the information presented at the five-day hearing.   *See* ***id.***, ¶15. Except as noted below, the parents do not point to any evidence introduced during the hearing that suggests a comparison between the parenting the children received from B.B. and E.B. and the foster parents.   Indeed, any improper comparison made by the GAL during opening statements was dwarfed by the uncontroverted evidence that the parents did not meet the conditions of return.   Over the course of a five-day fact-finding hearing, multiple witnesses, including the social workers assigned to this case, provided overwhelming evidence that the parents had not met the court-ordered conditions for safe return.   At the close of trial, the jury was explicitly instructed to focus on the questions in the special verdict and not to consider the children's best interests.   Accordingly, even if the circuit court could

13

have done more to rein in the comparisons made by the GAL during her opening statement, any error in this regard was harmless.

*Witness Examinations*

¶30 I now turn to the GAL's examination of two witnesses: the social worker who initially assessed the family's needs and A.B.'s therapist. For reasons I now explain, I reject any argument that the circuit court erroneously exercised its discretion with regard to either witness.

¶31 The social worker testified about her assessment of safety concerns at the parents' home. The GAL asked, "In regard to safety concerns ..., what were the concerns that you observed in that house that brought the removal of [J.B.]? What did it look like for [J.B.] living in the house at that time?" B.B. objected to this questioning, and the circuit court overruled the objection. The social worker went on to explain that the home was "chaotic" and "pretty messy," and that she was concerned that there were "various people in and out of the home that had concerning criminal backgrounds."

¶32 B.B. argues that the circuit court should have sustained the objection because it was not relevant, and it was only meant to draw "a comparison between the children's lives before and after removal and the inference that the children are better off outside of their home." I disagree and conclude that the court did not erroneously exercise its discretion with regard to the questioning of the social worker. As the court explained, the questioning was geared toward the social worker's assessments of needs, and the court had already ruled that some evidence would be admitted about the assessments of needs, which were relevant to the conditions of return.

14

¶33    Turning to A.B.'s therapist, she testified that she had concerns about A.B.'s behavioral challenges, including tantrums, hitting, and aggression, and that she developed a treatment plan for A.B. with the collaboration and support of his caregivers.  In response to the GAL's question about who had been the "most consistent people that have contact with you," the therapists indicated the foster parents.  The GAL then asked whether the therapist had seen "a benefit of that interaction" with the foster parents, and B.B. objected.  The GAL indicated that she would go on, effectively withdrawing the question.

¶34    E.B. takes issue with this line of questioning.  However, as E.B. acknowledges, the line of questioning is relevant to the parents' involvement with their children and their compliance with the conditions of return.  E.B. argues that, "[t]o avoid infusing of best interests" into the grounds phase of the TPR proceedings, "the GAL could have directly asked if E.B. worked with the therapist rather than invite a comparison between E.B. and the foster parents."  I agree that the GAL could have framed her question more directly to avoid an unfavorable comparison, but I do not discern any erroneous exercise of discretion on the circuit court's part.

*The Closing Argument*

¶35    During her closing argument, the GAL reiterated that the jury would have to determine "whether the Department made reasonable effort to provide the services to these parents and whether the parents failed to meet those conditions established by the [CHIPS] court for the safe return of their children to their home."  The focus of the GAL's argument was to compare the parents' lifestyles and the conditions in their home that led to the CHIPS petitions with their lifestyle and living conditions after they received services from the Department.  The GAL

argued that, even with the Department's support, B.B. and E.B. had not made "the choices needed to ensure the physical and emotional well-being of their children, keep them safe."

¶36     The GAL reminded the jury of the testimony about what their home "looked like" before the children were removed.  She described the home as chaotic, dirty, and covered in dog feces and urine, and the children as cold, sad, hungry, crying, distressed, and sitting in wet and soiled diapers.  She also described the frequent visitors to the home who had criminal backgrounds and used drugs.  The GAL asked, "Can you get that image of the [parents'] home?  Do you have that in your head?  Now I want you to put [A.B.], who was not yet four years old, and [J.B.], who had just turned two, put them in that picture in your head."

¶37     The GAL discussed the testimony about the parents' intermittent participation in the services offered by the Department, and their failure to consistently engage with those services.  She also discussed B.B.'s and E.B.'s continued use of drugs and alcohol, the fights they had with each other and their houseguests, and their decision to allow friends and family with criminal backgrounds to stay at their home even after the Department was involved and the parents were under orders to consistently maintain safe housing.  At one point, the GAL argued:  "This is a lifestyle by their own admissions that reflect[s] and is very similar to the lifestyle they had when their children were in their home and their children were sexually victimized by one of those people in their home."

¶38     B.B. objected on the ground that, although there had been allegations about sexual abuse, "there was never testimony that [the children] were in fact sexually abused."  The circuit court overruled the objection, noting that the jury

16

would be asked to determine the facts, and that "you can obviously address that in your closing."

¶39 The GAL then summarized the counseling services and treatment for substance use disorder that had been offered to the parents, but which the parents did not accept. Toward the end of her argument, the GAL stated, "Imagine, if you would, if the kids were returned to them around May of 2019."

¶40 After the GAL concluded her argument, and outside the presence of the jury, the parents again asked the circuit court to declare a mistrial. The basis for the mistrial was that, even though the parents had reported a belief that A.B. had been abused by a guest in their home, that guest had not been criminally charged and there was no conclusive proof. E.B.'s counsel added: "And I personally believe that there were other things that [the GAL] brought in that were not in evidence …. [I]f this does come to an appeal, I think someone who's got all those transcripts in front of them and can really look what the evidence is as opposed to what [the GAL argued in closing]."

¶41 The circuit court denied the request for a mistrial, explaining that there had been "ample testimony about sexual assault to whatever degree of probability may well have occurred while [A.B.] was living with the parents at the hands of one of the guests." The court explained that it would be obvious to the jury that the houseguest had not been convicted of sexual assault. As the court explained, the parents' attorneys would be "free to make that point in closing argument," but that it would be "up to the jury to weigh the evidence of assault with all the other evidence in the case and determine whether [the Department] made reasonable efforts to provide services and whether the parents have complied, which are the issues in this case."

¶42    To the extent that the parents argue that the circuit court erred by not sustaining the objection to the argument about sexual victimization and by not granting a mistrial on the same grounds, I disagree.  As the court explained, regardless of whether any sexual assault was definitively proven, there was "ample testimony" from multiple witnesses who had concerns that A.B. had been sexually victimized by a guest that the parents allowed into the home.  The GAL's statement may indicate her assessment of the likelihood that an assault occurred, but she did not misrepresent any evidence.

¶43    Separately, B.B. maintains that the GAL's extensive discussion regarding the children's pre-removal living conditions veered the jury's focus away from the parents' compliance with the conditions of return and toward the children's best interests.  The parents did not object on this ground, and therefore, they did not preserve this issue for appeal.  *See Schill v. Wisconsin Rapids Sch. Dist.*, 2010 WI 86, ¶45 & n.21, 327 Wis. 2d 572, 786 N.W.2d 177 (explaining that issues not raised in the circuit court are forfeited and supporting proposition that appellate courts generally do not address forfeited issues).  But even if they had done so, I would reject the argument for the following reasons.  First, again, the GAL did not instruct the jury to consider the best interests of either child during deliberation.  *See Scott S.*, 230 Wis. 2d at 469.  Second, as distinguished from her opening statement, the GAL did not compare the children's living conditions with their parents and the living conditions in foster care.  Instead, with the possible exception addressed above regarding sexual victimization, the closing argument accurately summarized evidence that was admitted, largely without objection, during the fact-finding hearing.  *See Affett v. Milwaukee & Suburban Transp. Corp.*, 11 Wis. 2d 604, 607, 106 N.W.2d 274 (1960) (explaining that closing arguments should be limited to a discussion of the facts admitted into evidence

18

and reasonable inferences from such facts). Third, as discussed above, the discussion of the children's pre-removal behavioral issues and the pre-removal conditions of the parents' home were relevant to the reasonableness of the Department's assessment of conditions that the parents would have to meet for the children's safe return. Again, the court expressly determined that such evidence would be admissible, and neither parent challenges that ruling on appeal. Finally, B.B. does not explain how the GAL's request that the jury "imagine" the children living in the home, which was based on testimony that the jury already heard, resulted in unfair prejudice.

¶44 For all of these reasons, I reject B.B.'s argument that the GAL's comments and questioning require a new fact-finding hearing. Whether I consider the GAL's comments and questioning individually or collectively, I conclude that the circuit court did not erroneously exercise its discretion with regard to any of the objections or requests for a mistrial made by either parent.[6]

## II. The Dispositional Hearing

¶45 I now turn to B.B.'s due process argument, which is directed at the dispositional phase of the TPR proceeding. B.B. argues that she had a right to be physically present at the dispositional hearing, and that the court violated her due process rights by conducting the dispositional hearing via videoconferencing technology without conducting a colloquy to ascertain whether she waived this

---

[6] B.B. also points to the fact that one juror did not find grounds for termination, and she contends that "it is very likely that other jurors would have done the same" if the GAL had not been allowed to present prejudicial information and argument. I reject this argument as speculative.

right.  These arguments present questions of law, and I review such questions de novo.  *State v. Schaefer*, 2008 WI 25, ¶17, 308 Wis. 2d 279, 746 N.W.2d 457.

¶46   By way of background, the dispositional hearing was originally scheduled for April 9, 2020.  At that time, the circuit court was subject to an order issued by the Wisconsin Supreme Court that suspended most in-person circuit court hearings in light of the COVID-19 pandemic.[7]  When the parties convened on April 9 using videoconferencing technology, the court acknowledged that the parents requested an in-person dispositional hearing.  As the court explained, it was required to balance "the interests of the children in having some certainty as to what their future holds" with "the parents' perspective" on this "extremely important matter."  The court attempted to accommodate the parents' request by continuing the dispositional hearing until May 19, 2020.

¶47   On May 19, 2020, the parties again convened via videoconferencing technology.  The circuit court indicated that it was still operating under "the COVID-19 temporary emergency rules that have been issued by the Wisconsin Supreme Court and the La Crosse Circuit Court favoring audio and video conferencing in lieu of live appearances."[8]  The court was hopeful that in-person

---

[7] See the Wisconsin Supreme Court's Order:  In the Matter of Remote Hearings During the COVID-19 Pandemic, issued March 22, 2020 pursuant to its administrative and superintending authority over the judicial system of this state.  This order suspended all in-person proceedings in all appellate and circuit courts, with limited exceptions, through April 30, 2020.  Dispositional hearings in termination of parental rights cases were not included in the limited exceptions.    The order required judges to utilize available technologies, including teleconferencing and video conferencing, in lieu of in-person courtroom appearances, and permitted judges to waive in-person appearance requirements "otherwise required by statute."

[8] See the Wisconsin Supreme Court's Amended Order:  In Re the Matter of Remote Hearings During the COVID-19 Pandemic, issued on April 15, 2020.  The amended order continued the suspension of in-person court proceedings "until further order of this court."

appearances might be possible if the dispositional hearing was continued for another "couple of months."

¶48 The circuit court finally held the dispositional hearing on July 29, 2020, via videoconferencing technology. At the outset of the hearing, the court noted that it had been "attempting to comply with [the parents'] request that the hearing be conducted in-person." It explained that it "considered trying to get approval to conduct this hearing in person, but with La Crosse County currently being in the red zone, that just wasn't going to happen. So we're conducting this hearing via Zoom." Neither parent objected.

¶49 B.B. argues that she had a statutory and constitutional right to be physically present at the dispositional hearing, and that the court could not hold the hearing over a videoconferencing platform unless she affirmatively waived that right. Yet, B.B. cites no cases to support the proposition that her right to be physically present is *constitutional* in nature, requiring a knowing, intelligent, and voluntary waiver. She makes a passing reference to *Illinois v. Allen*, 397 U.S. 337, 338 (1970), but her reliance on *Allen* is misplaced. *Allen* provides that defendants in criminal proceedings have a constitutional right to be physically present at certain hearings. TPR proceedings are not criminal proceedings, and B.B. does not cite any legal authority for the proposition that the constitutional right recognized in *Allen* also applies to respondents in TPR proceedings.

¶50 To be clear, as a respondent in a TPR proceeding, B.B. does share certain *statutory* rights with criminal defendants. WISCONSIN STAT. § 885.60 governs the use of teleconferencing technology in certain types of cases, including

TPR proceedings.[9]  Subsection (1) provides circuit courts with discretion to hold proceedings via videoconferencing technology, subject to the limitations of subsection (2).  Paragraph (2)(a) provides that, "[e]xcept as may otherwise be provided by law," a respondent in a TPR proceeding "is entitled to be physically present in the courtroom" during the dispositional hearing.  Paragraph (2)(d) provides that, if a respondent in a TPR proceeding objects to the use of videoconferencing technology "regarding any proceeding where he or she is entitled to be physically present in the courtroom, the court shall sustain the objection."  Thus, under § 885.60(2)(d), a court cannot normally hold a dispositional hearing using videoconferencing technology over a TPR respondent's objection.[10]

¶51    B.B.'s argument that the circuit court violated her statutory rights fails for two reasons.  First, B.B. failed to preserve this issue on appeal.  Months before the final dispositional hearing, both parents expressed a desire to be physically present, and the court attempted to accommodate the requests by postponing the dispositional hearing on at least two separate occasions.  When the dispositional hearing did eventually occur in July 2020, neither parent renewed

---

[9] WISCONSIN STAT. § 885.60 was originally created by supreme court rule, consistent with WIS. STAT. § 751.12.  *See* S. CT. ORDER 07-12, 2008 WI 37, 305 Wis. 2d xli (issued May 1, 2008, eff. July 1, 2008).

[10] Citing WIS. STAT. § 885.60(2)(a) and (d), at least one Wisconsin case has acknowledged that TPR respondents normally have a statutory right to be physically present in the same courtroom as the judge during the dispositional hearing.  *See Adams Cnty. Health & Human Servs. Dep't v. D.J.S.*, 2019AP506, unpublished slip op. ¶¶27-31 (WI App. June 20, 2019).  I cite this one-judge opinion for persuasive value consistent with WIS. STAT. § 809.23(3).

At times, B.B. cites to WIS. STAT. § 885.60(2)(b), which sets forth procedures relating to witness testimony via videoconferencing technology.  However, these procedures were not implicated in this case, in part because neither parent called any witness during the dispositional hearing.  Accordingly, I do not address B.B.'s arguments about that subsection.

their request to be physically present, nor did they object to the circuit court's use of videoconferencing technology.[11] When B.B. appeared at the dispositional hearing through videoconferencing and did not object, she forfeited her right to raise this issue on appeal. *See Schill*, 327 Wis. 2d 572, ¶45 & n.1.

¶52 Second, even if B.B. had preserved her objection, the dispositional hearing in this case did not occur in normal times. As the Department points out in its response brief, the Wisconsin Supreme Court issued a series of orders addressing court procedure during the COVID-19 pandemic pursuant to its administrative and superintending authority over the judicial system of this state. The order that was in effect in July 2020 expressly suspended the provisions of WIS. STAT. § 885.60(2)(d).[12] Therefore, B.B.'s statutory right to prevent the circuit court from holding the dispositional hearing by videoconferencing was suspended at the time the dispositional hearing was held. B.B. does not make a single reference to these orders in her opening brief, nor does she develop any

---

[11] The record does not support B.B.'s assertion that she had "ongoing objection" to the use of videoconferencing technology.

[12] See the Wisconsin Supreme Court's Order: In Re the Matter of the Extension of Orders and Interim Rule Concerning Continuation of Jury Trials, Suspension of Statutory Deadlines for Non-Criminal Jury Trials, and Remote Hearings During the COVID-19 Pandemic, issued on May 22, 2020, at page 4. Note 1 provides: "The provisions of WIS. STAT. § 885.60(2)(b) and (d) are suspended for each circuit court until the April 15, 2020 amended order "In Re The Matter of Remote Hearings During the COVID-19 Pandemic" ceases to apply to that particular circuit court."

The court's May 22, 2020 order also continued the suspension of in-person court proceedings "for each circuit court until that circuit court shall have prepared an operational plan for the safe resumption of in-person proceedings and jury trials and the plan shall have been approved by the chief judge of the applicable judicial administrative district." The La Crosse County Circuit Court's operating plan was approved in March 2021.

argument in her reply brief challenging our supreme court's use of its administrative and superintending authority.[13]

¶53     For these reasons, I reject B.B.'s argument that the circuit court erred when it held the dispositional hearing using videoconferencing technology.[14]

*By the Court.—*Orders affirmed.

This opinion will not be published.     *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[13] *See* WIS. CONST Art. VII, § 3; WIS. STAT. § 751.12 (1); ***In re Kading***, 70 Wis. 2d 508, 519-20; 235 N.W.2d 409 (1975).

[14] Because I conclude the circuit court did not err, I need not consider the Department's arguments regarding harmless error. *See* ***Barrows v. American Fam. Ins. Co.***, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (only dispositive issues need be addressed).